## HARRIS v. UNITED STATES.
### No. 3589.

Circuit Court of Appeals, Fourth Circuit.
May 1, 1934.

S. H. Sutherland, of Clintwood, Va. (Vance S. King, of Pennington Gap, Va., on the brief), for appellant.

T. X. Parsons, Asst. U. S. Atty., of Roanoke, Va. (Joseph H. Chitwood, U. S. Atty., of Roanoke, Va., and H. F. Dickensheets, of Washington, D. C., Atty., Department of Justice, on the brief), for the United States.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

WILLIAM C. COLEMAN, District Judge.

This appeal arises out of a suit on a war risk insurance policy, brought by the plaintiff, the present appellant. It is stipulated in the case that the petition, filed by the plaintiff, alleged issuance to the plaintiff of a policy containing the usual clause of insurance against total and permanent disability as long as the policy was in effect; that the policy remained in effect from November 18, 1917, until May 1, 1918; that the plaintiff became totally and permanently disabled while the policy was in force; and that he made demand for payment under the policy, but that the same was refused by the government. It is further stipulated that the government admits all of the aforegoing allegations of the petition except that respecting plaintiff's disability while the policy was in force, which the government denies.

At the close of the plaintiff's testimony, the trial judge directed a verdict for the government, upon which judgment was duly entered and plaintiff has appealed. This directed verdict forms the basis of the principal assignment of error. There are three other assignments of error, one of which, however, has been abandoned. The remaining two relate to alleged errors in the rulings of the trial judge with respect to the admissibility of certain evidence, to wit: (1) That the court erred in refusing to allow a witness of the plaintiff, a clerk of the examining doctor at the time the plaintiff was discharged from the Army, to testify as to what the doctor said during a physical examination of the plaintiff covering his, the doctor's opinion as to plaintiff's physical condition; and (2) that the court erred in refusing to allow a physician, called on behalf of the plaintiff, who had treated him from the time of his discharge from the Army, to express an opinion as to the ability of the plaintiff to "follow continuously any substantially gainful occupation."

We will dispose of the two last-named questions relating to the admissibility of evidence before taking up the major question in the case, namely, whether or not there was error in directing a verdict for the government.

With respect to the first of the assignments of error relating to the admissibility of evidence, we find that it is without merit because the testimony sought to be introduced was clearly hearsay, and may not properly be brought within any theory of res gestae.

As to the other assignment of error relating to the medical testimony, that also is without merit, because had the physician been permitted to answer the question, this would have been tantamount to permitting him to settle matters of law for himself and by applying the same to the facts within his knowledge, to try the very questions that the jury had been impaneled to try. In Prevette v. United States, 68 F.(2d) 112, and United States v. Sauls, 65 F.(2d) 886, this court held that similar testimony should be excluded.

Coming now to the major question in the case, namely, did the court err in directing a verdict for the government, we must apply the firmly established rule that the evidence must be considered in its aspect most favorable to the plaintiff; that the weight of the testimony is always for the jury to determine; and that therefore a trial judge should not direct a verdict unless the evidence is so conclusive that were a verdict rendered for the plaintiff, the court, in the exercise of a sound judicial discretion, would be compelled to set it aside. Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492.

While not conclusive, at the outset we cannot lose sight of the great lapse of time that occurred between the last date when the policy of insurance was in effect, namely, May 1, 1918, when the plaintiff claims he was permanently and totally disabled, and the date when the suit was filed, namely, May 8, 1933, or approximately fifteen years. As was said in the case of Lumbra v. United States, supra, at pages 560–562 of 290. U. S., 54 S. Ct. 272, 276: " * * * In the absence of clear and satisfactory evidence explaining, excusing, or justifying it, petitioner's long delay before bringing suit is to be taken as strong evidence that he was not totally and

permanently disabled before the policy lapsed."

The following material facts disclosed by the record are uncontradicted. Plaintiff, a married man now thirty-nine years old, was discharged from the Army on April 29, 1918, as being unfit for military service because of valvular heart disease, he having been in the service only about five months at Camp Lee, Va. During this period, he was for the most part unable to fulfill his military duties. It appears, however, from his own testimony that after his discharge he worked as follows: From September, 1918, to January, 1920, he was employed in a general store at the rate of $60 a month, which he drew regularly. From January, 1920, to November, 1921, he worked on his uncle's farm as manager, the amount of his earnings not being disclosed. From January, 1922, to April, 1923, he worked as a traveling salesman for a farm machinery company, for which he was paid $75 a month. From April, 1923, to October, 1924, he was again a traveling salesman, this time for a shoe company, and was paid on both a commission and wage basis. The exact amount of his compensation, however, does not appear from the record. From October, 1924, to some time in 1925 (not disclosed), he was manager of an office building in Pennington Gap, Va. During the next five years he spent a considerable length of time in California, making two trips there, and, while resident there, he peddled canned goods, on a commission basis, and also for several months operated a small restaurant. During this period he married again.

It thus appears that during a period of twelve years, he worked for a total of not less than six years and presumably for a considerably longer period, but due to the fragmentary character of the testimony, the exact amount is not capable of accurate computation. Also, it is to be noted that while he tried numerous different occupations, he, nevertheless, worked at several of them for a considerable length of time and for aught that appears in the record, with reasonable regularity. It is true that he spent considerable time in government hospitals during 1926 and 1927 and that the Veterans' Bureau notified him in 1932 that it had decided he had been permanently and totally disabled from April 20, 1927. In October, 1924, in connection with an application by plaintiff for compensation, he stated that he had a partial disability which, however, he said commenced in April, 1923. Also, in April, 1927, in an application for reinstatement of $1,000 of his war risk insurance (which amount he subsequently received), he stated that he was in good health.

As opposed to this work record, eight lay witnesses, consisting of his mother, friends, and neighbors, testified that plaintiff had done little work, and was able to do little work, since his discharge from the Army. In addition, two private physicians who had examined him shortly after his discharge, one in May, 1918, and the other in the autumn of the same year, and several times thereafter, stated that they found he was suffering at the time of their first examinations from valvular heart disease, and for this reason that he was then permanently and totally disabled in so far as ability to carry on manual labor was concerned, but they nevertheless testified that he could do work not requiring physical exertion, and one of them testified that he might well perform such duties as those of a store clerk.

The record of gainful work thus performed, as admitted by the plaintiff himself, conclusively negatives total and permanent disability on May 1, 1918. It is true that the plaintiff worked under a real physical handicap, and that as early as his discharge from the Army, his heart ailment was presumably not merely serious, but of a permanent nature. However, the test embraces total as well as permanent disability. " 'Total disability,' " said the Supreme Court in Lumbra v. United States, supra, pages 559, 560, of 290 U. S., 54 S. Ct. 272, 276, "does not mean helplessness or complete disability, but it includes more than that which is partial. 'Permanent disability' means that which is continuing as opposed to what is temporary. Separate and distinct periods of temporary disability do not constitute that which is permanent. The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life. But manifestly work performed may be such as conclusively to negative total permanent disability at the earlier time."

In Gregory v. United States, 62 F.(2d) 345, this court, on facts quite similar to those here presented, affirmed a judgment on a verdict directed in favor of the government.

For the reasons stated, we find there was no error in the rulings of the trial court and that, therefore, the judgment must be affirmed.