## UNITED STATES v. HARRIS.

### No. 5580.

Circuit Court of Appeals, Seventh Circuit.

Dec. 23, 1935.

Michael L. Igoe, U. S. Atty., Edmond Sullivan, Asst. U. S. Atty., and Frederic Maughmer, Atty., Department of Justice, all of Chicago, Ill., for the United States.

Joseph O. McKiernan, of Chicago, Ill., for appellee.

Before EVANS and ALSCHULER, Circuit Judges, and LINDLEY, District Judge.

ALSCHULER, Circuit Judge.

The United States appeals from a judgment recovered by Harris on March 1, 1935, in an action which was begun November 12, 1929, on a war risk insurance policy. September 26, 1932, the action was dismissed by the court for want of prosecution when reached on the trial call. January 7, 1933, Harris moved the court to set aside the order of dismissal and reinstate the cause, which motion was not decided, but was renewed on June 15, 1933. Harris set up in his verified motion that his attorneys were nonresidents of Illinois, and that attorneys representing the United States had agreed with Harris' attorneys that when the case was called they would notify the court of plaintiff's readiness for trial; that such notification was not given; that Harris and his attorneys did not become aware of the dismissal of the cause until January, 1933, just before making their motion to set aside the dismissal and reinstate the cause; and that from January to June, 1933, both sides had been in correspondence respecting a stipulation for reinstatement of the cause. June 15, 1933, the court entered the following order: "On agreement of the parties to this suit now here made in open Court It Is Ordered that the order of dismissal and judgment heretofore taken and entered herein of record be and the same is hereby vacated and set aside and cause reinstated upon the dockets of this Court."

February 16, 1935, by leave of court, Harris filed his amended petition, to which on February 21, 1935, the United States filed its answer. The cause was tried February 27, 1935, before a jury, which returned a verdict for Harris.

Harris contends he was totally and permanently disabled from September 28, 1918, at which time his policy was in force. In view of the conclusion we reach, it will not be necessary to recite in detail the history of his insurance, its lapses, and its revivals by application upon the premium payments of his disability payments of considerable amounts which had been awarded him.

■ We first meet the contention that, since a number of the terms of the District Court had passed after the cause was dismissed for want of prosecution, and before motion was made to set aside the order of dismissal and to reinstate the cause, the court had lost jurisdiction of the cause, and was wholly without power to grant reinstatement. This might be so were it not for the fact that this order for reinstatement was made upon agreement of the parties to the action. We can see no reason, either upon principle or authority, why the parties were not competent to enter into such agreement, and having entered into it, and the cause upon reinstatement having proceeded to trial and judgment, why the court did not have jurisdiction to render a judgment which was as binding as if there had been no previous dismissal for want of prosecution. The subject-matter of the litigation was one within the court's jurisdiction; and whether jurisdiction over the person of the defendant was derived from service of process or from its entry of appearance and answering and thus submitting itself to the jurisdiction of the court, seems to us quite immaterial.

The particular circumstances of this case cry out loudly against the application of a rule as here contended for by appellant. Under the applicable statutes, upon dismissal of such an action for want of prosecution a plaintiff has one year in which to begin another action. 38 U.S.C. § 445 (38 U.S.C.A. § 445). So when this suit was thus dismissed, Harris might have begun a new action within one year, or until September 26, 1933, but not thereafter. At the time of the agreed reinstatement he had still left about three months in which to begin the suit. But, relying upon the Government's agreement, he did not begin a new suit; and if the Government's contention were here allowed, Harris' right of action would, through such reliance, be barred. Surely no defendant, individual or corporate, private or public, should be permitted to profit by such breach of its agreement.

■ The stipulated reinstatement may in any event be regarded as in itself the institution of a new action; and while there was no new service of process on the defendant, yet if conduct indicating waiver of service were necessary to be shown to give jurisdiction of the defendant, this does appear in the Government's filing, shortly before the trial, its answer to Harris' amended petition, as well as in its full and unrestricted participation in the trial.

■ Various errors are assigned respecting matters which arose in the course of the trial. We deem it necessary to consider but one; viz., the court's direction to the jury at the close of the trial to find a verdict for plaintiff. If it could be said that all the evidence in the case, with all reasonable deductions therefrom, supports the plaintiff's right of recovery, such a direction to the jury would be sustainable; but not where there is substantial evidence which tends to support the defense. The parties are in accord on these propositions, and citation of authorities is unnecessary.

That the record discloses evidence from which it might properly be concluded that Harris was totally and permanently disabled, may be conceded; but for the purposes hereof we are interested in the question whether there is disclosed by the record any substantial evidence to the contrary.

The policy was first issued to Harris August 5, 1918, while he was in training at Camp Grant. He testified that when he arrived there on August 2, 1918, and for several weeks thereafter, he was feeling well; but that when he was inoculated against typhoid fever he became ill, and so remained until he was discharged from the service, on a physician's certificate, September 27, 1918; and that he has been ill much of the time since his discharge. After his discharge Harris stopped paying premiums on his policy and permitted it to lapse. He stated at the trial that he did not then know he was totally and permanently disabled or he would not have permitted the policy to lapse. Indeed, if while the policy was in force he became totally and permanently disabled, it would not have lapsed.

In September, 1920, he married, and he testified he did not then think he was permanently and totally disabled, and would

not have married if he had thought he could not take care of a family. In 1919, upon his application, he was granted soldiers' compensation, and under section 305 of the World War Veterans' Act (38 U. S.C. § 516 [38 U.S.C.A. § 516]) this revived his insurance otherwise lapsed—unless, indeed, total and permanent disability was then present. The policy was suffered to lapse a number of times thereafter, but was each time reinstated. With each reinstatement Harris was asked whether, at that time, he was totally and permanently disabled, and each time he answered "No." The Government offered in evidence three such applications, dated respectively December 31, 1919, June 23, 1923, and August 26, 1926. They are important not only as declarations against interest made by Harris himself, but also in connection with the statute (38 U.S.C. § 515 [38 U.S.C.A. § 515]), which sets up the following condition precedent to the approval of applications for reinstatement: "That the applicant during his lifetime submits proof satisfactory to the director showing that he is not totally and permanently disabled." Such statements by the claimant, however they may be explained by him or by other facts and circumstances in the case, constitute evidence of no mean degree, and should, with all the other evidence in the case, have been submitted to the jury for its consideration.

 There was evidence also that in the years following the date of the disability as fixed in the court's direction Harris has had quite a number of employments. The work record of such a claimant is generally important as bearing on totality and permanence of disability. It is true that the amount of work he has done does not appear to have been as much as in some such cases where recovery has been allowed for alleged total and permanent disability; but it is perhaps more than in some other cases where recovery has been denied. The influence of the quantum of work done, upon the question of total and permanent disability, is usually for the jury. To be sure, there are cases where the record is so replete with proof of employment and earnings that the court may properly say that this of itself indicates the disability was

not total and permanent. On the other hand, where the work periods have been less frequent and protracted, or are entirely absent, this need not necessarily be taken to indicate total disability. There may be circumstances disclosed indicating that the claimant's financial situation was such that he did not need to work, or reasons other than disability appear to explain his idleness; and so the mere fact of not having worked would not conclusively indicate total and permanent disability. Indeed, it appears that during all the time since 1919 this claimant has been receiving disability compensation from the Government—some of the time as low as $19 monthly, but more of the time as high as $100 a month, and sometimes even more.

Several doctors testified that Harris was suffering from mitral stenosis; that it is a slowly developing disease; and that one so suffering would not get well. One of claimant's witnesses, Dr. Arkin, testified that thousands of people are "working as doctors, lawyers, elevator operators and all kinds of occupations with mitral stenosis." Other medical witnesses made statements to about the same effect, saying that mitral stenosis would not necessarily disable one from all work, but that heavy physical labor should be avoided; also that light work giving some exercise and occupying the mind would probably do no more harm than sitting around the house reading newspapers.

According to Harris, his heart condition was brought on by his inoculation at Camp Grant against typhoid. As to this Dr. Arkin said, in effect, that he never knew of such inoculation causing mitral stenosis.

 It cannot be said that all such evidence carried no weight at all and was entitled to no consideration. We are of the view that it was for the trier of the facts —in this case the jury—to pass upon the weight which should be accorded this evidence.

Upon the record, we are convinced that the peremptory instruction to find for the plaintiff should not have been given, and for this reason alone the judgment is reversed, with direction to grant a new trial.