## M. J. CARROLL, Inc., v. GILMORE.
### No. 4442.

Circuit Court of Appeals, Fourth Circuit.
April 24, 1939.

W. Harold Arnold, of Greenville, S. C. (A. C. Mann, of Greenville, S. C., on the brief), for appellant.

W. B. McGowan and Benj. A. Bolt, both of Greenville, S. C. (Thos. A. Wofford, of Greenville, S. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and HARRY E. WATKINS, District Judge.

HARRY E. WATKINS, District Judge.

This appeal is from a judgment entered upon a verdict of a jury for $2,400 in favor of Paul Gilmore, plaintiff, in the trial of an action to recover in quantum meruit for rental value of machinery and equipment used by defendant. The sole question is whether the trial court erred in overruling defendant's separate motions for nonsuit and a directed verdict.

There is little conflict in the evidence. On August 15, 1936, defendant was awarded a contract by the South Carolina state highway department to construct four concrete bridges. Subsequently, plaintiff and the defendant entered into a written contract, whereby plaintiff was to furnish most of the machinery and equipment and act as superintendent on one project known as the Greenville county project. Defendant promised to pay claimant a percentage of the profits, and in addition a salary of $250 per month. Work was commenced about September 9, 1936. Plaintiff remained in charge as superintendent until April, 1937, when he was transferred to a smaller Abbeville project being constructed by another company owned by M. J. Carroll, president of the defendant company. Before the transfer considerable friction developed between plaintiff and Schoolbred, state engineer, over mostly personal matters. There is evidence to the effect that the transfer was made temporarily to pacify Schoolbred, and that plaintiff's foreman was left in charge in the hope that the friction would be eased and plaintiff could return to the Greenville project. After plaintiff had been on the Abbeville job about two weeks he received a letter from defendant, dated April 30, informing him that another superintendent had been placed in charge of the Greenville job, effective April 27. On June 10 Carroll wrote plaintiff that his salary on the Greenville job was stopped when the new superintendent had relieved him there. No salary was paid to plaintiff on the Greenville project after April. There is evidence to the effect that at different times thereafter plaintiff wrote to defendant or talked with Carroll in an effort to get some definite understanding relative to the Greenville project; that plaintiff asked Carroll "on several occasions as to what he was going to do for the use of my equipment", and that Carroll replied that he was going "to try to work out something". No settlement was ever reached. Defendant continued to use plaintiff's equipment until the job was completed at a loss. Claiming that these circumstances amount to a breach of contract on the part of defendant, plaintiff has elected to treat the contract as abandoned and sue in quantum meruit for the use of his equipment.

Three points are urged by defendant in support of its motion for nonsuit and directed verdict. First, it says the case should have been taken away from the jury because plaintiff's remedy, if any, is in equity instead of law. We see no merit in this point. Plaintiff could elect (1) to proceed in equity for an accounting to recover profits; or (2) proceed at law to recover damages for alleged breach of contract; or (3) treat the agreement as terminated and sue at law in quantum meruit for use of his equipment. Furthermore, it appears that when the case was called for trial, counsel for defendant made specific inquiry as to the form of action. When told that it was upon quantum meruit, he raised no objection, and proceeded to trial. If the case was one of exclusive equitable cognizance, his remedy was to then move for transfer of the case from the law to the equity side of the court. Fay v. Hill, 8 Cir., 249 F. 415; Mobile Shipbuilding Co. v. Federal Bridge & Structural Co., 7 Cir., 280 F. 292.

The second ground urged by defendant for a nonsuit and directed verdict is that plaintiff is confined to his share of profits as his measure of damages. We can not agree. This action is not to recover profits, but to recover for the use of equipment upon an implied contract in quantum meruit. In such an action the measure of damages is the reasonable rental value of the equipment. If the defendant, without just cause, excluded and removed plaintiff from management or participation in the enterprise, such con-

stituted a breach of the agreement by defendant, whereupon the plaintiff himself thereafter had the right to abandon and withdraw from the agreement and sue in quantum meruit for the use of his equipment.

The third and principal ground assigned for the directed verdict is that the evidence was insufficient to show that defendant terminated the written agreement and that plaintiff recognized and acted on such termination. These are the only factual considerations raised on this appeal.

Defendant's answer admits the removal of plaintiff but pleads justification. It shows that under state regulations the engineer could require the dismissal of any person on the job who should "misconduct himself or be incompetent or negligent" in the performance of his duties, or who "neglects or refuses to comply with instructions". There is no evidence to the effect that the state ever ordered or required plaintiff's dismissal, and there is little, if any, evidence of the existence of any of the causes of removal mentioned above. The charge against plaintiff seemed to be that he could not get along with Schoolbred, the state engineer. The latter testified that the greatest complaint he had with plaintiff was his "attitude". If Carroll questioned plaintiff's ability or conduct, it is not reasonable to believe that he would have transferred him to his own project.

It is contended that plaintiff's conduct would indicate that he considered the original contract in force until the end of the job. The repeated demands of plaintiff for some new understanding for the continued use of his equipment is incompatible with such a conclusion. Moreover, the complaint in this case was filed some two months before the completion of the job. In the complaint the plaintiff repudiated the original agreement and sued in quantum meruit. It is said that plaintiff's continued visits to Greenville were inconsistent with his election to abandon the contract. The evidence shows that plaintiff passed right by the Greenville job in going back and forth to his work at Abbeville. It seems perfectly natural that with defendant continuing to use his equipment without a new "understanding" he would be interested in knowing what was going on. No claim is made that plaintiff ever exercised any supervision on the Greenville project after he went to Abbeville. To show that plaintiff maintained an interest in the Greenville job defendant relies strongly upon a letter written by plaintiff on July 21 in which he says that he is sending practically all of his organization on the Greenville job, and that he had been informed that the profit accumulated by him on the job was exhausted and it would sustain a loss. That letter is not inconsistent with plaintiff's position because he ends by saying " * * * it is imperative that I have a definite understanding as to what you propose in connection with the Greenville job." If he considered the original contract still in existence, there would have been no necessity for any new understanding.

Throughout this case defendant has taken the position that the provision in the agreement as to salary was separate and independent from the provision relating to profit sharing; that, even if there was a breach of the provision for plaintiff superintending the job, the provision for profit sharing would remain in force. We answer here, as did the trial judge in his charge to the jury, that such provisions were inseparable and that removal and exclusion of the plaintiff, without cause, from the enterprise would constitute a breach of the entire agreement. There is no reason to believe that plaintiff would have put his equipment there without his salary employment.

In considering defendant's motion for a directed verdict, the court must apply the firmly established rule that the evidence must be considered in its aspect most favorable to plaintiff, and a verdict should not be directed unless the evidence is so conclusive that were a verdict rendered for plaintiff, the court, in the exercise of a sound judicial discretion, would be compelled to set it aside. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Lumbra v. U. S., 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Harris v. U. S., 4 Cir., 70 F.2d 889.

A study of the record convinces us that there is substantial evidence to support the verdict of the jury. We see no error in the rulings of the trial court and the judgment must be affirmed.

Affirmed.