### KINNEY v. UNITED STATES.

### No. 5158.

Circuit Court of Appeals, Fourth Circuit.

Nov. 17, 1943.

Z. I. Walser, of High Point, N. Car., and Robert H. McNeill, of Washington, D. C., for appellant.

David A. Turner, Attorney, Department of Justice of Washington, D. C. (Carlisle W. Higgins, U. S. Atty., and Bryce R. Holt, Asst. U. S. Atty., both of Greensboro, N. Car., Francis M. Shea, Asst. Atty. Gen., Lester P. Schoene, Director, Bureau of War Risk Litigation, and Wilbur C. Pickett, Asst. Director, Bureau of War Risk Litigation, all of Washington, D. C., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and WARING, District Judge.

WARING, District Judge.

George DeVine, a veteran of the first world war, was the holder of a war risk insurance policy in the sum of $10,000 issued by the United States under authority of the World War Veterans' Act, 38 U.S. C.A. §§ 421, 511 et seq. The premiums on the policy were paid and the insurance kept in force until the last day of May 1919, and adding the period of grace it con-

tinued in effect until June 30, 1919. The assured had been discharged from the army on May 13, 1919, and on September 28, 1920, he was adjudged insane and committed to a state hospital for mental cases.

After the death of the veteran in 1941, Josephine D. Kinney was appointed administratrix of the estate of the said George DeVine and instituted this suit in the District Court for the Middle District of North Carolina.

A jury trial was waived and the case came on for a hearing before Judge Johnson J. Hayes, who filed his findings of fact and conclusions of law, wherein he found that the insured was permanently, but *not totally* disabled, before the time when his policy lapsed, and accordingly, a judgment was rendered in favor of the defendant. The plaintiff has appealed upon two grounds, namely; (1) that the trial judge erred in finding that the veteran was not totally disabled; and (2) in the exclusion of certain evidence offered as to the deceased's disability and the facts surrounding the same. Unfortunately, very little evidence could be produced on the salient points involved in the case. DeVine became insane in 1920 and was confined to one or more institutions for mental cases for approximately twenty one years. When the case was tried all of the physicians who examined or had had charge of him had died and persons who might have been called as witnesses to his condition were not available. Complete records of his place of employment had not been preserved. Moreover, after such a lapse of time the recollection of many of the parties who did testify was necessarily considerably dulled.

The plaintiff introduced evidence to show that the soldier shortly after his discharge from the army had returned home to live with his sister and her husband and had almost immediately shown unusual traits and had acted queerly and in fact abnormally. Many facts were adduced to show mental aberrations. A physician, called as an expert, testified that from the facts adduced he was of the opinion that the soldier was suffering from dementia praecox at the time of or almost immediately after his discharge from the army and his return home; and Judge Hayes so found as a matter of fact. On the other hand the government produced a work record and showed that the soldier had been in almost continuous employment for a considerable period of time. He had sought and obtained work as a veneer inspector during the year 1919. Due to the lapse of time and the loss of records it was impossible to state definitely just how long a time he had worked in 1919, but a fair summary of the facts shown would indicate that he worked for approximately four months during 1919. The time and pay book for the year 1920 was introduced in evidence and showed the record of this and other employees over a period from about the middle of January to the early part of September 1920. According to this office record during that time the veteran worked 1608 hours and received as wages the sum of $696.30.

If the records shown above are to be believed then we find that the veteran worked in 1920 for a period of approximately eight months. The actual records show employment for 238 days (1920 was a leap year). Deducting Sundays and three holidays during that period would give us 201 working days, which would show an average employment of eight hours a day. Of course this is only an average since the oral testimony as well as the record shows some irregularity in attendance. In other words, he some times worked longer hours and some times shorter, but nevertheless, these records show an average which is thoroughly comparable with usual work records. As a matter of fact, many of the records of other employees shown in the same book are much less continuous. If we spread the total wages over a period of thirty four weeks, the time covered by the work record, we find an average weekly wage of approximately $20.50. In 1920 such compensation was considered good pay for this class of work. This record, if correct, shows a substantial and impressive work record. The plaintiff by some of her witnesses challenged the correctness of this work record and showed absences and aberrations and actions not usually consonant with a sound mind. It might be said that all parties are in agreement that the veteran was suffering from mental disease and that same was progressive. The government, however, takes the position that the work record clearly establishes the fact that he was able to perform work and earn a living and is, therefore, definitely shown not to come within the definition of total disablement.

 It will thus be seen that there was testimony pro and con on the question

of total disablement and that there was a question of fact to be decided by a trial court. If the case had been tried before a jury undoubtedly it would have been one wherein the Judge should not have directed a verdict, but should have submitted the issues for the consideration of the jury. A *jury trial having been waived the presiding judge sat as both judge and jury and it was his province to pass upon the issues.* He saw and heard the witnesses and we do not feel it incumbent upon us to decide these questions of fact. Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that when a jury is waived "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses".

A record of gainful work might be sufficient to conclusively negative a claim for permanent disability and if uncontradicted might be sufficient to warrant a direction of verdict. Harris v. United States, 4 Cir., 70 F.2d 889. In the instant case the defendant did introduce such testimony. Of course there was contradictory evidence by the plaintiff and therefore, an issue of fact was raised, which under ordinary circumstances, would cause a court to refrain from directing a verdict for either plaintiff or defendant, leaving the question to a jury. The jury having been waived in this case, of course the question was one to be entirely passed upon by the trial judge.

In the case of Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 1090, 87 L.Ed. 1458, the Supreme Court says: "The words 'total and permanent' are the statute's, not our own. They mean something more than incipient or occasional disability."

"The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life. *But manifestly work performed may be such as conclusively to negative total permanent disability at the earlier time.*" Lumbra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 276, 78 L.Ed. 492. (Emphasis added.)

In the case of Carter v. United States, 4 Cir., 49 F.2d 221, at page 223, this court in an opinion by Judge Parker holds that the mere fact that a veteran may have worked for substantial periods is not conclusive, but should be considered by a jury as tending to negative the claim of disability and says: "And we think that under the evidence here the permanence as well as the totality of the disability was a question for the jury."

Dr. Watkins, who gave expert testimony as to the disease from which the veteran *was suffering, admitted that work of the character done by this veteran during 1919 and 1920 would be beneficial rather than harmful.* In the Carter case the veteran attempted to work several times, but always had to give up. In the instant case a substantial and continuous work record is shown. In both cases there was a question of fact to be passed upon by a jury or a court sitting as a jury.

In the case of Poole v. United States, 65 F.2d 795, this court in a per curiam opinion affirmed the holding of the District Court for the Middle District of North Carolina in a case tried by it without a jury wherein the veteran was suffering from dementia praecox and had suffered from it from the day of his discharge. In *that case it was shown that the disease varied in its intensity and at times the veteran was unable to work, but at other times he had regular occupation.* The District Court held that while the veteran was permanently disabled he was not totally disabled and that he was, therefore, not entitled to recover.

"The influence of the quantum of work done, upon the question of total and permanent disability, is usually for the jury." United States v. Harris, 7 Cir., 80 F.2d 771, 773.

We feel that the appellant has failed to show that the findings of fact are "clearly erroneous" and hold that the judgment of the District Court can not and should not be disturbed.

The other question involved requires but little attention. It seems that the plaintiff attempted to have one or more parties testify as to statements made by Clay Sprinkle, the superintendent or foreman supervising the work of the veteran during the time he was employed. This would of course be clearly hearsay, and unless it can be brought within one of the exceptions to the hearsay rule, is incompetent. It is argued that such statements do come within certain of the well known exceptions, the primary argument being that they were part of the res gestae. The statements in question were not apropos of

or connected with any of the immediate acts or transactions of the veteran, but were statements said to have been made by the deceased party Sprinkle, indicating a sympathy with the condition of the veteran and explaining why he was employed. These were merely expressions of sympathy or opinion and certainly not connected with the actual employment. To have allowed such statements in evidence would have opened the door to testimony as to statements or opinions given by any and everybody.

In regard to the question of hearsay testimony, even if the evidence should have been admitted, its exclusion was not prejudicial because similar testimony was admitted and its submission would not have contradicted the records showing regular employment and the testimony that the work was regular and satisfactory.

"There can be no well-defined rule as to what is properly admissible as a part of the res gestae in all cases, and in passing on the question in each individual case the trial judge is acting in the exercise of his discretion, and in the absence of an abuse of that discretion there is no error." Flannagan v. Provident L. & A. Ins. Co., 4 Cir., 22 F.2d 136, 140.

The District Judge gave the plaintiff every opportunity to prove her case, even opening the case for additional testimony after he had orally made an adverse finding. We find no error and direct that the judgment of the District Court be affirmed.