## 18097

J. D. CLARKE, Appellant, v. SOUTHERN RAILWAY COMPANY, Respondent

(131 S. E. (2d) 844)

*Messrs. Clarke W. McCants, Jr.,* and *James H. Fowles, Jr.,* of Columbia, *for Appellant,*

*Messrs. John Gregg McMaster* and *Robert J. Thomas,* of Columbia, *for Respondent,*

July 15, 1963.

BUSSEY, Justice.

This action for personal injury and property damage, incurred in a crossing collision between a pick up truck and a

locomotive, upon trial resulted in an order of involuntary nonsuit. In the argument of the motion for nonsuit and discussion of the evidence, there was considerable colloquy between the court and counsel, with the result that it is difficult to isolate a precise ground or grounds upon which the order was based, to the exclusion of other grounds. It is clear, however, that the trial court concluded that the plaintiff was guilty of "gross contributory negligence as a matter of law", and that such was the principal, if not the only, ground upon which said order rested. We shall discuss this appeal primarily in the light of whether he was correct in this conclusion, but will express our views about at least one other ground or basis which may have motivated the trial judge in granting the motion.

We approach the decision of this primary issue assuming that the statutory signals of the approach of the locomotive were not given, since there was clearly evidence to that effect. We also approach it in the light of the well settled proposition that in consideraion of whether the trial judge was correct, we are required to view the evidence and all inferences reasonably deducible therefrom in the light most favorable to the plaintiff.

The plaintiff operates a services station in the City of Columbia and for nearly a year prior to the time of the collision had been living at a point in Lexington County some ten miles away. At a point approximately five miles west of of the City of Columbia the track of the defendant runs parallel to U. S. Highway No. 1, both of them running in an easterly and westerly direction and the track being some three hundred fifty feet south of the highway. A secondary paved road turns off U. S. Highway No. 1, approximately perpendicular thereto, in a southerly direction, and crosses the track of the defendant. Immediately beyond the crossing, the secondary road forks rather sharply, with one fork going in an easterly direction and one in a westerly direction. The plaintiff was familiar with the crossing as he traveled that particular road with at least a fair degree of frequency in

commuting to and from work, there being another crossing somewhere in the vicinity which he also used.

Plaintiff was his only witness on the issue of liability. He testified that on the day of the collision he was en route home and turned off of U. S. Highway No. 1 to the south of the secondary road, which was a very heavily traveled one, driving his pick up truck at a speed of ten or fifteen miles an hour; that as he approached the crossing he slowed his speed to not over ten miles an hour, listened, and looked both ways, but that he did not see or hear the approaching train; that he could not readily see to his right as his view was obstructed by broomstraw, weeds and grass that had grown up "maybe ten or twelve feet high", some of which were growing within about eleven feet of the center line of the railroad track.

There was evidence that the level of the track and the roadway at the immediate crossing was somewhat above the level of the roadway to the north of the track, with the result that plaintiff proceeded up at least a slight incline in the immediate area of the crossing. He testified that he did not see the train, which was proceeding in an easterly direction, until his front wheels were about on the track, and that if he had applied his brakes at that moment, he would have stopped on the track and that he then had no option except to proceed across, which he did, with the result that the locomotive struck the rear end of the truck.

Defendant, as apparently did the court below, places great stress on admissions drawn from the plaintiff on cross-examination. In answer to questions which specified neither the location of the train nor of the truck, the plaintiff admitted that by stretching himself into a somewhat unnatural position he could have seen over the top of the weeds. We do not regard this admission as conclusive since neither the questions nor the answers were anything like specific as to just what and where, or from where, the plaintiff could have so seen over the top of the weeds.

Also, on cross-examination, at one point the plaintiff admitted that he did not look to the right after he got out beyond the weeds but, in answer to the very next question, he said, "I looked to the right momentarily but I heard nothing. I heard nothing so I assumed that there was nothing so as I got right up to the track, I had to go because if I stopped it would have killed me."

Plaintiff more than once admitted that he did not look to the right after getting beyond the weeds, but he had already testified that he did first see the train when his front wheels were either right at or on the track. Since, under his testimony, some of the growth, which obstructed his view, was within eleven feet of the center of the track, the interval of time and distance "after he got beyond the weeds" until his wheels were right at or on the track, was necessarily relatively brief. His answers or admissions in this respect are not conclusive as they have to be considered in the light of and in connection with all of his testimony, the ultimate weight thereof being for the jury.

Plaintiff admitted that certain photographs, offered in evidence by the defendant, were a fair representation of the scene of the collision. There is nothing in the record to show when these photographs were taken, or the vantage point from which they were taken. The questions propounded to the plaintiff did not specify any time at which these photographs were supposed to be a fair representation. He was not asked anything about the extent of obstruction to view, or lack thereof, as indicated by the photographs. Of importance, we think, in considering the effect of the admission by the plaintiff that they were a fair representation of the scene, is the fact that the trial court permitted testimony to the effect that one or two days after the collision the defendant had cut the straw or weeds close to the track which were blocking the view. We are not here concerned with any question of the admissibility of this testimony, but it seems to us that since such was admitted, the same has to be considered in evaluating plaintiff's answer on cross-examination.

The photographs, if timely taken, are evidence that plaintiff's view was not obstructed to the extent to which he testified it was, but as was held in the recent case of *Gossett v. Piedmont & Northern Railway Company*, 241 S. C. 501, 129 S. E. (2d) 326, we cannot accept these photographs as anything like conclusive evidence, particularly since neither the dates nor the vantage point thereof were specified.

Defendant, recognizing that simple contributory negligence is no defense to this action under the terms of Section 58-1004, 1962 Code of Laws, contends that the failure of plaintiff to see the train until it was too late for him to do anything except go on across convicts him of gross or willful negligence as a matter of law. Reliance is, of course, upon such cases as *Robison v. Atlantic Coast Line R. Co.,* 179 S. C. 493, 184 S. E. 96, frequently cited and applied, in which the firmly established rule as to the duty of a traveler to effectively exercise his senses before arriving upon a railroad crossing is strongly stated.

Gross negligence within the meaning of Section 58-1004, supra, which must appear as the only reasonable inference from the evidence, to justify a nonsuit on that ground, has been defined to be a failure to exercise slight care or "negligence so gross and reckless as to amount to willfulness." *Ford v. Atlantic Coast Line R. Co.,* 169 S. C. 41, 168 S. E. 143.

In the *Ford* case is found the following language, which we think applicable here:

"It has never been held in this state that one about to cross a railroad track at a public highway or street crossing is under an *absolute* duty to stop, look, and listen, before going on said track, unless the exercise of ordinary care and prudence, under all the surrounding facts and circumstances, requires the adoption of such a course, and it is ordinarily a question for the jury to determine, in the application of the standard of due care, whether the attempt of a traveler to cross without looking or listening effectively was excusable

or culpable. *Zeigler v. Northeastern Railroad Company,* 5 S. C. 221; *Edwards v. Southern Railroad Company,* 63 S. C. 271, 277, 41 S. E. 458; *Bamberg v. Atlantic Coast Line Railroad Company,* 72 S. C. 389, 392, 51 S. E. 988; *Chisolm v. S. A. L. Railway Company,* 121 S. C. 394, 402, 114 S. E. 500."

Here, viewing the evidence as a whole, in the light most favorable to the plaintiff, it may well be inferred that he approached the crossing, of which he had knowledge, in a cautious and prudent manner, slowing down, listening, and looking both ways before he committed himself to the crossing. Since he was under no absolute duty to stop, look, and listen before going on the track, unless the exercise of ordinary care and prudence under all the surrounding facts and circumstances required the adoption of such a course, we think it was for the jury to say whether his failure to see the train until it was too late was excusable or culpable. We cannot say as a matter of law the only reasonable inference deducible from the testimony is that the plaintiff was guilty of such gross contributory negligence as to bar a recovery and authorize a nonsuit.

Since the decision of the court below will have to be reversed and the case remanded for a new trial, we feel that we should comment on at least one other question which arises from the colloquy between counsel and the court in the course of argument of the motion for nonsuit. The court's remarks are at least susceptible of the interpretation that the court considered that the plaintiff's knowledge of the crossing and any obstruction of his view, rendered the existence of any obstruction of no effect in the case. In the words of one of plaintiff's exceptions: "The court concluded as a matter of law that vegetation growing on the defendant's right-of-way, which obscured the vision of the plaintiff, could not constitute active negligence on the part of the defendant because the plaintiff frequently used the railroad crossing."

From the extended colloquy, we are uncertain as to what the court's view was as to the legal effect of any obstruction

of visibility under the circumstances of the case, but think it well to quote the following language from the case of *Chisolm v. Seaboard Air Line Ry. Co.,* 121 S. C. 394, 114 S. E. 500, 503:

"A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the greater the care required of both. *Edwards v. [Southern] Railway [Co.],* 63 S. C. [271,] 288, 41 S. E. 458; *Johnson v. S. A. L. Ry. Co.,* 163 N. C. 431, 79 S. E. 690. Ann. Cas. 1915B, 598; [*Southern*] *Railway Co. v. Hansbrough's Adm'x.,* 107 Va. 733, 60 S. E. 58."

The existence of any obstruction to visibility, the extent thereof, whether or not there was any negligence on the part of the defendant in permitting the obstruction, and, if so, whether such negligence was the proximate cause of the collision, are all normally questions for the jury in a case such as this. The knowledge or lack of knowledge, of the existence of any such obstruction, and the extent thereof, is a fact or circumstance to be considered in connection with other proved circumstances and facts in determining whether a party is guilty of either negligence or willfulness under all of the circumstances.

Reversed and remanded for a new trial.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.