**SEABOARD COAST LINE RAILROAD COMPANY, Plaintiff,**

v.

**OWEN STEEL COMPANY, Defendant.**

**Civ. A. No. 71–659.**

United States District Court,
D. South Carolina,
Columbia Division.

Oct. 10, 1972.

N. Welch Morrisette, Jr., Columbia, S. C., for plaintiff.

Donald V. Richardson, Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This suit was instituted by the plaintiff Seaboard Coast Line Railroad Company, hereafter referred to as Seaboard, to recover property damages resulting from a collision which occurred on December 7, 1970, between plaintiff's trains and defendant's tractor-trailer trucks, at the intersection of the plaintiff's railroad with South Beltline Boulevard near but outside the city limits of Columbia, South Carolina. Defendant, hereafter referred to as Owen, filed a general denial and a counterclaim seeking recovery for property damages to its tractor-trailer and steel. The amount of damage sustained by each party was stipulated. The parties agreed to strike punitive damages from their claims. The defense of contributory negligence, gross negligence, recklessness, wilfulness and wantonness was raised by each party.

The trial of the case started on Tuesday, March 21, 1972. After all the evidence was submitted, the parties moved for directed verdicts in support of their respective claims and for the dismissal of the respective claims against them. All the motions were denied, and the case was submitted to the jury, with instructions on the issue of liability, on Thursday, March 23, 1972. The jury was unable to reach a verdict, and a mistrial was thereupon declared by the court.

Seaboard now renews its motions (under Rule 50(b) [1] of the Federal Rules of Civil Procedure) for a directed verdict and for judgment for plaintiff

---

1. Rule 50(b) states:
Motion for Judgment Notwithstanding the Verdict. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have

submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any

on its complaint and for a directed verdict of dismissal of Owen's counterclaim. Where the jury fails to return a verdict and is discharged, under subdivision (b) of this rule, the court could direct entry of judgment as if the requested verdict had been directed or could order a new trial. Daniels v. Pacific-Atlantic S.S. Co., 120 F.Supp. 96 (D.C.N.Y.1954).

The Seaboard track runs in a fairly straight line East to West for several miles prior to this grade crossing. South Beltline Boulevard, as it approaches the crossing, approximates a rude shallow S. The first view of the tracks is head on at right angles. Coming from the plant site of Owen Steel Company on South Beltline Boulevard, one passes under a Southern Railroad trestle and views the elevated embankment of the Seaboard tracks. After a moderately winding curve to the left the roadway nearly parallels the tracks in a straight course for a distance of some 700 feet, thereafter makes a slight curve to the right prior to the crossing. The highway crosses the track in a straight line at an angle of approximately 30 degrees. From the first curve to the left to the second curve to the right, the roadway has a gradual incline to crossing grade.

The curves are marked by South Carolina Highway Department curve warning signs and posted speed limit signs of 25 m. p. h. About 300 feet prior to the crossing there is a round South Carolina Highway Department Railroad crossing sign mounted on a post. Further warning of the crossing consisted of an X crossing symbol and a RR railroad symbol painted in white letters on the pavement. The crossing itself is marked by the standard post-mounted railway crossbuck sign.

Plaintiff's train was approaching the City of Columbia at approximately 7:35 a. m. on December 7, 1970, at a speed of 15 to 20 miles per hour. The day was clear and, according to the testimony, the sun had just risen and was slightly to the north of the east-west track.

Defendant's driver was driving a 1969 White cab-over type tractor with a Dorsey flatbed trailer in tow with a load of steel beams aboard. The prospective route was from Owen Steel Company to Fort Jackson, S. C. via South Beltline Boulevard northbound. The driver, Mr. Readie Davis, admittedly experienced, was driving up the incline toward the crossing in ninth gear at a speed of about 20 miles per hour. He did not stop at the crossing and although the tractor successfully cleared the tracks, the locomotive struck the trailer. The momentum of the train carried the tractor trailer off the road and down the right of way. A party in a Rambler automobile was also involved in the collision, as the truck and train carried across his lane, sweeping his vehicle down the right of way.

The testimony was in conflict as to whether the statutory signals [2] were given. This issue would also determine the

---

judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

2. S.C.Code Section 58–743 provides in part as follows: "A bell of at least thirty pounds' weight and a steam or air whistle shall be placed on each locomotive engine or interurban car and such bell shall be rung or such whistle sounded by the engineer, fireman or motorman at the distance of at least five hundred yards from the place where the railroad crosses any public highway, street or traveled place and be kept ringing or whistling until the engine or interurban car has crossed such highway, street or traveled place."

applicability of 58–1004 of the S.C.Code Anno., 1962.[3] The locomotive crew, consisting of the engineer and the brakeman, testified that the signals were given. Defendant offered testimony of those who did not hear the signals, and plaintiff offered testimony to explain the reason for their failure to hear the signals.

A brakeman was stationed on the left of the engine. The defendant's truck and another which preceded it were observed by the brakeman for some distance prior to the collision. According to the brakeman's testimony, he saw the truck was not going to stop and he shouted to the engineer who immediately put the train into emergency braking. Defendant argues that there is a reasonable inference of negligence on the part of the brakeman because he observed the truck approaching and failed to apply the emergency brakes which was the only control he had to operate, and that the brake was immediately in front of him.

Without attempting to reproduce here other conflicting evidence and inferences present at the trial, this court concludes that plaintiff's motions for a directed verdict on the complaint and on the counterclaim must be denied because the issues are those of fact which are properly for the jury and not the court. It is elementary that in ruling upon such motions the evidence must be construed in the light most favorable to the party against whom such motion has been made, namely Owen Steel Company, the defendant; and a verdict should not be directed unless the only reasonable inference to be drawn from the evidence is in favor of Seaboard. Therefore if there are reasonable inferences to be drawn from the evidence in favor of Owen, then it would be erroneous to direct a verdict against Owen. This court will take questions of fact away from the jury only where the necessity for such action is clear and imperative. M. J. Carroll, Inc. v. Gilmore, 103 F.2d 560 (4th Cir. 1939); Copley v. Stone, 75 F. Supp. 203 (D.S.C.1948).[4]

■■ Since there is conflict in the testimony as to whether the statutory signals were given, the court must assume for the purpose of these motions that they were not given. Failure to give the signals is negligence per se. Ford v. Atlantic Coast Line R. Co., 169 S.C. 41, 168 S.E. 143 (1932). Limehouse v. Southern Ry. Co., 216 S.C. 424, 58 S.E.2d 685 (1950). Owen's counterclaim is based on Section 58–1004 of the South Carolina Code of Laws (1962) which requires a finding of contributory gross negligence[5] or recklessness on the part of Owen before recovery by it may be defeated in such crossing cases as this one where there is evidence that the statutory warning signals, required by Section 58–743 of the South Carolina Code of Laws (1962), were not given by the train crew. Atlantic Coast Line Ry. Co. v. Glenn, 198 F.2d 232 (4th Cir.

3. S.C.Code Section 58–1004. Injuries at crossings; penalty and damages.—"If a person is injured in his person or property by collision with the engine or any car of a railroad corporation at a crossing and its appears that the corporation neglected to give the signals required by the General Railroad Law and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision or to a fine recoverable by indictment, unless it is shown that in addition to a mere want of ordinary care the person injured or the person having charge of his person or property was at the time of the collision guilty of gross or wilful negligence or was acting in violation of the law and that such gross or wilful negligence or unlawful act contributed to the injury."

4. If this were a nonjury proceeding, this court would find that the facts warrant a judgment for plaintiff, but the facts here, because of the demand for a jury, are for the jury.

5. The Supreme Court of South Carolina has defined gross contributory negligence as a failure to use even slight care or as "negligence so gross and reckless as to amount to willfulness." Craven v. Southern Ry. Co., 412 F.2d 835 (4th Cir. 1969).

1952), cert. den. 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719.

■■ Seaboard contends that Readie Davis, Owen's driver, neither attempted to look nor listen for an approaching train before he crossed the track. If this were the only reasonable inference to be drawn from the evidence, then a verdict against Owen would be proper. Wingate v. Seaboard Coast Line R.R. Co., 244 S.C. 332, 137 S.E.2d 258 (1964). However, Readie Davis testified [6] that he looked both ways, had his window partially down and listened, and neither heard a train nor saw a train. He testified that when he tried to look down the track to the east, his vision was blinded by the bright, rising sun but that he could see for about a hundred feet. Larry Richardson, a witness who had stopped his car on the other side of the track and who was heading south on South Beltline, testified that he could hardly see the train due to the glare of the sun; and he was situated in an optimum location for observing the approaching train. Readie Davis had driven for over 700 feet parallel to Seaboard's track and never heard a whistle blow or bell ring. In determining the negligence of a motorist in a railroad crossing collision, the test is always the conduct of an average, reasonably prudent person under existing conditions, and when railroad whistles or other warnings are not being sounded, a resulting assumption of safety to cross the railroad arises. Vernon v. Atlantic Coast Line Ry. Co., 221 S.C. 376, 70 S. E.2d 862 (1952). A jury could reasonably conclude that, under the conditions existing at the time of the accident, Readie Davis took reasonable precautions to ascertain whether a train was approaching. The duty of a motorist is to look and see what reasonably could be seen; to listen and hear what reasonably could be heard. There is no absolute duty to see what reasonably cannot be seen or to hear what reasonably cannot be heard. Certainly there is no absolute

duty to stop at a railroad crossing. Clark v. Southern Ry. Co., 243 S.C. 27, 131 S.E.2d 844 (1963).

■ Even where it is admitted that a motorist failed to use his senses to detect an approaching train, it is ordinarily a question for the jury in the application of the standard of due care to say whether the attempt of the traveler to cross the track without looking and listening effectively was excusable or culpable. Chisolm v. Seaboard Air Line Ry. Co., 121 S.C. 394, 114 S.E. 500 (1922).

Of particular significance to this case is the case of Clark v. Southern Railway Company, 243 S.C. 27, 131 S.E.2d 844 (1963). In that case the motorist was very familiar with the crossing where the collision occurred. He had traveled a considerable distance on a road which paralleled the railroad, and then turned off onto the secondary road which proceeded for about 350 feet before crossing said railroad perpendicularly. The track was elevated above the secondary road and there were bushes which obscured the motorist's vision down the track except for a very brief moment and for a very short distance just prior to crossing the track. The motorist had to go up a slight incline to cross the track. He looked both ways, slowed his vehicle, and listened. He neither saw nor heard the approaching train. Further, he admitted on cross examination that he did not look in the direction from whence the train came after he passed the obstructing bushes. He also admitted that he could have seen over the obstructing bushes by maneuvering his body into a somewhat unnatural position. The trial court granted the Railroad's motion for non-suit on the ground that the plaintiff was guilty of contributory gross negligence and recklessness. The South Carolina Supreme Court reversed. Quoting earlier cases, it was stated:

> It has never been held in this state that one about to cross a railroad

---

6. The credibility of Readie Davis is for the jury.

track at a public highway or street crossing is under an absolute duty to stop, look, and listen, before going on said track, unless the exercise of ordinary care and prudence, under all the surrounding facts and circumstances, requires the adoption of such a course, and it is ordinarily a question for the jury to determine, in the application of the standard of due care, whether the attempt of a traveler to cross without looking or listening effectively was excusable or culpable . . . 131 S.E.2d 844, 847.

The Court further stated:

Here, viewing the evidence as a whole, in the light most favorable to the [motorist], it may well be inferred that he approached the crossing, of which he had knowledge, in a cautious and prudent manner, slowing down, listening, and looking both ways before he committed himself to the crossing. Since he was under no absolute duty to stop, look, and listen before going on the track, unless the exercise of ordinary care and prudence under all the surrounding facts and circumstances required the adoption of such a course, we think it was for the jury to say whether his failure to see the train until it was too late was excusable or culpable. We cannot say as a matter of law that the only reasonable inference deducible from the testimony is that the plaintiff was guilty of such gross contributory negligence as to bar recovery and authorize a nonsuit. 131 S.E.2d 844, at 847.

For this court to grant plaintiff's motion on the counterclaim it would require a finding of gross contributory negligence or recklessness on the part of Owen as a matter of law. If this were a case tried before the court without a jury this court would consider making such a finding. The nature of the motion prevents such treatment by the court.

■■ As to the motion for a directed verdict on the complaint, plaintiff contends that in order to succeed on its motion the defendant must be culpable of gross or wilful negligence as a matter of law and the plaintiff must be free from gross or wilful contributory negligence. Assuming this contention is correct, the court's finding above that defendant was not grossly contributorily negligent as a matter of law would be sufficient to deny plaintiff's motion. However, it appears plaintiff is attempting to use Section 58–743 of the South Carolina Code of Laws (1962), for a purpose other than what was intended. The statute was enacted solely to protect the traveler using, or about to use, a crossing. Lawrence v. Southern Ry. Co., 169 S.C. 1, 167 S.E. 839 (1933). Truett v. Atlantic Coast Line R. Co., 206 S.C. 144, 33 S.E.2d 396 (1945). This statute by its terms fixes the duty of the railroad company at a public crossing, and imposes upon it a degree of liability upon its failure to obey the legislative mandate differing from that which would ordinarily exist in the circumstances. The statute allows the railroad to escape liability only upon proving that the traveler was guilty of gross contributory negligence. It does not follow that the railroad should recover if the traveler is found to be guilty of that degree of negligence. Both Section 58–743 and Section 58–1004, supra, are for the protection of travelers and were not enacted to benefit the railroad in the manner that plaintiff seeks to utilize them. To accept the theory of the plaintiff that it can recover even if it was negligent (assuming violation of Section 58–743) if it shows defendant was guilty of gross contributory negligence would be to recognize the doctrine of comparative negligence. The doctrine of "comparative negligence" is not recognized in South Carolina unless required by statute and any contributory negligence of plaintiff is sufficient, regardless of degree or extent, if it contributes to injury as a proximate cause thereof, without which it would not have occurred. Coleman v. Lurey, 199 S.C. 442, 20 S.E.2d 65 (1942). Plaintiff's con-

tributory negligence by virtue of violation of the statutory signal requirement would bar its claim no matter what degree of negligence is assigned to the defendant.

Plaintiff's motions for directed verdicts on the complaint and counterclaim are hereby denied and the issues shall be submitted to a jury upon retrial.

In the event either party desires certificates under 28 U.S.C. § 1292(b), Federal Rules of Civil Procedure, this court is open to such a motion.

And it is so ordered.