18640

Doyle CONNELLY, Respondent, v. SOUTHERN RAILWAY
COMPANY, Appellant
(154 S. E. (2d) 569)

*Messrs. F. Dean Rainey,* of Greenville, and *John Gregg McMaster* and *Robert J. Thomas,* of Columbia, *for appellant,*

*Lowell W. Ross, Esq.,* of *Rogers, McDonald & Ross,* of Columbia, *for respondent,*

*Messrs. F. Dean Rainey,* of Greenville, and *John Gregg McMaster and Robert J. Thomas,* of Columbia, *for appellant in Reply,*

May 1, 1967.

G. Badger Baker, Acting Associate Justice.

This action, which resulted in a verdict for actual damages, was brought for damages to a tractor and trailer, operated by respondent's employee, Robert V. Kime, which was in collision with a freight train of appellant at a grade crossing on Assembly Street in the City of Columbia, on March 8, 1965, at about 7:00 o'clock A. M. Appropriate motions were made during the trial in preservation and presentation of appellant's single exception which is, in brief and question form, whether Kime, respondent's agent or servant, was guilty of gross contributory negligence as a matter of law.

The principal delicts alleged in the complaint are the failure to give the statutory signals, the maintenance of a dangerous public crossing, and the absence of a watchman or flagman at the crossing, or other reasonable protection to prevent injuries to travelers. It will have to be assumed that the statutory signals were not given for the required distance in accordance with Section 58-743, 1962 Code of Laws, and this point is conceded by appellant. It is also admitted that appellant did not provide a watchman or flagman or any operating mechanism such as lights or gates

to warn of an approaching train, but the trial Judge did not submit to the jury any question or issue of an unsafe crossing and the responsibilities of a railroad carrier in relation thereto. Although Assembly Street has heavy traffic it cannot be assumed that the particular locale was of such inherent or characteristic danger as to constitute an unexpected, latent or hidden peril.

At the point in issue, Assembly Street is a wide, four-laned street running generally North and South. The collision took place at a three track crossing near the intersection of Catawba Avenue and Assembly. This intersection is approximately 100 feet north of the first track encountered by one traveling south. These tracks cross Assembly Street diagonally and at grade, running generally northwest and southeast. The first track, traveling south, is a spur leading to Columbia Mills. The second is a "house" or side track. The third, the site of the collision, is the main line. The crossing was posted with the usual crossarm signs. Underneath the crossarm sign is a second sign giving notice of the presence of three tracks. Further back is a highway Department advance warning sign of the crossing. These signs, however, are not of material significance since Mr. Kime was aware of the crossing and familiar with the topography having traversed the area on previous occasions on similar trips.

Mr. Kime left the Columbia Truck Terminal a few minutes before 7:00 o'clock and was proceeding south on Assembly Street. He was transporting about 32,000 pounds of apples which were to be delivered to a warehouse of Colonial Stores near the Farmer's Market located several blocks southeast of the crossing. Visibility was clear, the record does not indicate the presence of distracting factors and the evidence does not show movement of heavy traffic.

Mr. Kime was traveling between 20 and 25 miles per hour as he approached and entered the Catawba Avenue intersection. He did not have a full view of the crossing and its northwestern approach until he had entered the intersection. This witness testified that he heard the locomotive

signals when he passed the "cross-buck" sign which is located in the northwest corner of the intersection and then saw the approaching train after entry into the intersection. He estimated that he was about 100 feet from the first track and the train was approximately 110 feet southeast of the crossing and traveling at about his rate of speed. He marked his position in the intersection and the point of collision on a plat of the area which is one of plaintiff's exhibits. Kime admitted, on cross examination, that the scale distance between these two points is "roughly 170 feet."

Kime's first reaction when seeing the oncoming train to his left was to apply his brakes, or in his words, "My first impulse was, I hit the brakes, and then I seen I was probably too late to stop the truck before I got on the track." He then speeded up to "36 or 37 or 38 miles an hour" to crossover, but the trailer section of the unit was struck by the locomotive when passing over the third track.

The driver, on cross examination, testified that the tractor-trailer, with its load, at 25 miles an hour could be brought to a stop in approximately 100 or 150 feet and, if necessary, in 100 feet. It is not shown in the testimony whether these estimates of stopping distances are based upon prior knowledge that a stop would have to be made commencing at a certain point or a stop to be made from sudden realization of impending danger. This, however, does not detract from the fact that the driver should have been alert to discover the peril and thereby have his vehicle under such control that it could have been stopped from the first point, known to him from past traversings, that brought the crossing in full view.

This first point of adequate view was when passing the "cross-buck" sign, about 125 feet from the first track of the crossing when one is using the inside lane of traffic. Kime did not attempt to lessen his rate of speed until after hearing the whistle and seeing the train. His knowledge of the stopping or braking distances of the heavy unit which he was driving and his familiarity with the crossing area required

him to have the tractor-trailer under such control that it could be stopped in anticipation of peril. Kime did not look for the train or visually scan the crossing because of the "cross-buck" sign, or his proximity to the crossing, but his looking arose from hearing the whistle. The conclusion is inescapable that he had full opportunity of seeing the approaching train in time to avoid the collision when entering the Catawba Avenue intersection.

There are numerous cases, cited and quoted in West's Digest, Railroads, Key No. 327 (5) and 327(8), stating the principle that a traveler when reaching a railroad crossing and before attempting to cross the track or tracks must use his senses of sight and hearing to the best of his ability under the existing circumstances, and must look and listen in both directions for approaching trains, if not prevented from doing so by the railroad's fault and, to the extent the matter is under his control, he must look and listen at a place and in a manner that will make the use of his senses effective.

This rule is not inflexible but may be qualified by the surrounding circumstances. In *Chisolm v. Seaboard Air Line Ry.,* 121 S. C. 394, 114 S. E. 500, are examples of facts and conditions, none of which are present in this case, which may qualify the duty and excuse the failure to look and listen. The following is quoted from the *Chisolm* case:

"The facts and conditions which may qualify the duty and excuse the failure to look and listen within the foregoing rules are usually: First, where looking and listening would not have availed to avert the injury; second, where the traveler enters upon the track under an express or implied assurance of safety, as where gates are open or signals are given by watchmen; third, the presence of some imminent danger or emergency, not brought about by the traveler's own negligence; fourth, the presence and influence of unusual or extraordinary conditions, not created or controlled by the traveler himself, and especially where such conditions are brought about by the railway company, which are

sufficient to distract and divert the attention of a man of ordinary prudence and self-possession from the duty of looking and listening effectively for an approaching train."

The *Chisolm* case is cited, with the foregoing excerpt, in *Russell v. Seaboard Air Line Railroad Co.,* 246 S. C. 516, 525, 144 S. E. (2d) 799, 803, and with the following comment:

"Conversely, in the absence of circumstances reasonably tending to distract the attention or blunt the vigilance of a man of ordinary prudence and self-possession, a traveler who enters upon a conspicuously marked crossing, or one with which he is familiar, in the path of an approaching train, without the exercise of even slight care to discover the presence of so obvious and great a peril, when had he but looked or listened, he must have discovered it, is guilty of gross contributory negligence and recklessness as a matter of law."

The driver of the tractor-trailer found himself in a situation where he had to make a quick decision whether to attempt to stop the unit or attempt a passage over the tracks before the arrival of the train. He, however, is not within the protection of the doctrine of sudden emergency or sudden peril since his predicament was partially created by his own fault. This instruction to the jury received the approval of the Court in *Douglass v. Southern Railway Co.,* 82 S. C. 71, 62 S. E. 15, and is applicable to this case:

"[A] traveler cannot invoke that doctrine if he has been guilty of negligence in entering upon the crossing without taking the necessary precautions to ascertain whether or not the train or car was coming. In other words, if he has failed to exercise that degree of care which a man of ordinary prudence would have availed himself, would have used in like circumstances, he cannot invoke the doctrine that he was placed under an overwhelming necessity to do what he did, which resulted in his injury."

When Kime reached the Catawba Avenue intersection the circumstances were sufficiently under his control whereby the exercise of his powers of observation would have discovered the presence of the train in time to have avoided the collision. At this point he was not prevented from seeing the train, or hearing its signal even though tardily given, by any fault of appellant. This driver, without any distracting influence, made no effort to observe the approach of a train from his left until he heard the whistle and then when seeing the train he was in such proximity to the track that he realized he could not bring the vehicle to a stop at the speed which he was traveling.

The evidence in its most favorable aspect for respondent has only one reasonable conclusion, and that is, if respondent's agent or servant had been in the exercise of even slight care when approaching the crossing and before entering thereupon, he could not have failed to become aware of the peril which overtook him. The trial Judge should have directed a verdict for appellant or granted its motion for judgment notwithstanding the verdict.

Respondent has challenged the sufficiency of appellant's exception on the basis that it is entirely too general, vague and indefinite to be considered. Rule 4, Section 6 of this Court.

Appellant's exception is "That his Honor, the trial Judge erred in overruling defendant's motions for nonsuit, directed verdict and judgment notwithstanding the verdict, in that the only reasonable inference to be drawn from the evidence is that the plaintiff, through the conduct of his driver was guilty of gross or willful negligence or an act in violation of the law which contributed to the collision and resulting damage."

This exception presents the appellate question, the point involved, without having to search the record to discover the issue involved. It points out the specific issue of the presence or absence of slight care by respondent's driver. Necessarily this requires a review of the evidence to determine if the

driver by the reasonable use of his senses in the performance of his duty to look and listen could have discovered the proximity of the approaching train in time to avoid the collision. A comparison of the instant exception with those exceptions found to be deficient in the cases cited in West's Digest, Appeal and Error, Key No. 273, and its sub-sections, will reveal the basic differences.

Reversed and remanded for entry of judgment for appellant.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.