Shirley B. WESSINGER, Plaintiff,

v.

SOUTHERN RAILWAY COMPANY, INC., a corporation, Defendant.

Civ. A. No. 76–1372.

United States District Court, D. South Carolina, Columbia Division.

Oct. 25, 1977.

Ronald L. Motley, Blatt, Fales, Bedingfield, Loadholt, Poole, Motley & Richardson, Barnwell, S. C., M. M. Weinberg, Jr., Weinberg, Bryan, Warner & Brown, Sumter, S. C., for plaintiff.

John Gregg McMaster, Columbia, S. C., for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

This is a diversity action. It was commenced by the filing of a complaint with the Clerk of this Court on August 2, 1976. The action grows out of a train-automobile collision that occurred on October 10, 1974, at about 11:00 o'clock p. m. at a railroad crossing near the city limits of Lexington, South Carolina. Plaintiff, Mrs. Shirley B. Wessinger, sues to recover damages for the loss of consortium sustained as a result of the injury to her husband, Harold W. Wessinger, in the collision, alleging gross negli-

gence, carelessness, willfullness, and wantonness on defendant's part.[1] Wessinger, about 45 years of age, was riding alone and driving a 1970 Pontiac station wagon; he sustained extensive personal injuries in the collision, and the station wagon was demolished.

The train involved was Southern's freight train # 157, moving south from Columbia toward Lexington. It consisted of four diesel units and 86 cars, moving at a speed of 43 miles per hour at the time of the collision.[2] The speed limit as fixed by Southern's time table was 45 miles per hour. Mr. Wessinger was proceeding east on a paved South Carolina highway. As he approached the crossing, there were several warning signs on his right in the immediate area of the crossing: first, a 15 mph sign, second an advance warning sign, a round yellow disc with the letters "RR" on it, and third and

at the crossing a reflectorized railroad cross-arm sign.

The cause is now before the court on defendant's Motion for Summary Judgment.[3] The defendant contends that no genuine issue of material fact exists in the dispute and that plaintiff was guilty of contributory and grossly contributory negligence as a matter of law. For reasons hereinafter stated defendant's motion is denied.

Defendant bases its motion on the following facts: The train was advancing at a speed of 43 mph; approaching the crossing the train sounded its whistle as required by statute;[4] before approaching the crossing there was a 15 mph sign, a round yellow sign with the letter "RR" on it, and at the crossing a reflectorized cross-buck sign; Mr. Wessinger saw the 15 mph sign and the yellow "RR" sign; Mr. Wessinger admitted that he did not look for the train, hear the

1. Paragraph # 6 of the complaint reads:

. . . [T]he aforesaid collision, and the injuries and damages sustained by the plaintiff were directly and proximately caused by one or more of the acts of gross negligence, carelessness, willfulness, and wantonness of the defendant, its agents, servants and employees, to-wit:

(a) In failing to use any care or to slacken the speed of and bring said engine and train under control to avoid striking the automobile which the plaintiff's husband was driving at the aforesaid time and place.

(b) In failing to keep a reasonably proper and careful lookout for travelers, including the plaintiff's husband, on this occasion, upon the said public road crossing.

(c) In running the said engine and train at a reckless, high, unlawful and dangerous rate of speed and at a greater rate of speed than was reasonable and proper at the said time and place.

(d) In failing to erect and maintain at said crossing warning signals.

(e) In failing to maintain at said crossing a watchman or flagman, gates of reasonable sufficiency or other reasonable protection against injury to travelers on said highway at said crossing.

(f) In maintaining an unsafe, defective and dangerous public crossing at the place in question, said crossing being unfit for its intended use.

(g) In failing to give reasonable or any warning of the approach of said engine and train at said time and place by the ringing of a bell, sounding of a whistle or otherwise, as specifically required by statute and the Common Law of this State.

(h) In allowing trees, bushes, high weeds and poles and other obstructions to be and remain at and near the railroad crossing in question, thereby obstructing the view of approaching trains.

(i) In operating said engine and train at the time and place in a careless and negligent manner and in reckless and wanton disregard of the safety of travelers using said public road crossing, and in failing to use any of the slightest care to avoid striking the automobile which the plaintiff's husband was driving.

2. The 43 m. p. h. speed is established by the deposition of G. P. Monroe, Jr., Engineer (p. 17); L. M. Gimbrugh, Brakeman (p. 40); and answer to question # 17 of plaintiff's interrogatories to defendant. The speed is uncontroverted.

3. Fed.R.Civ.P. 56(c) provides that: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

4. Although the depositions of G. P. Monroe, Jr., the engineer, L. M. Gimbrugh, the brakeman, Harry C. Myers, the flagman, and T. C. Noland, the conductor, maintain the whistle was blown —Mr. Wessinger, in his deposition, says he did not hear it. The statute referred to is S.C.Code (1976), Sec. 58–15–978. If said statute is not complied with only gross contributory negligence will bar recovery. Sec. 58–17–1440.

train, or realize that the train was present.[5] These facts, claims defendant, establish contributory and grossly contributory negligence as a matter of law.

■ In a Motion for Summary Judgment, the record will be reviewed in a light most favorable to the party opposing the motion. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1961). And—summary judgment should not be granted unless the entire record shows a right to judgment so as to leave no room for controversy and establish affirmatively that the adverse party cannot prevail under any circumstances. *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co.*, 381 F.2d 245, 249 (4th Cir. 1967). Nor is summary judgment appropriate where inquiry into the facts is desirable to clarify the application of the law. *Kirkpatrick v. Consolidated Underwriters*, 227 F.2d 228 (4th Cir. 1955). Even though there may be no controversy over the basic facts, summary judgment should not be granted if the parties disagree as to the inferences which may properly be drawn. *American Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965). Under Rule 56 of the Federal Rules of Civil Procedure, any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. As the Fourth Circuit noted in *Phoenix Savings and Loan, Inc., supra*, "neither should summary judgment be granted if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions. . . . Burden is upon party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him." 381 F.2d at 249. (Citing 3, Barron & Holtzoff, *Federal Practice & Procedure*, §§ 1234, 1235 (Rules ed. 1958).

■ The law in South Carolina with respect to one approaching a railroad crossing is as follows:

Ordinary prudence requires every person who is in the full enjoyment of his faculties of hearing and seeing, before attempting a dangerous act or operation, to exercise them for the purpose of discovering and avoiding peril. (Citations omitted.) . . .. [But] the duty of the traveler arising under the foregoing rule is not an absolute one, but may be qualified by attendant circumstances. *The view taken in this state is that it is ordinarily a question for the jury in the application of the standard of due care to say whether the attempt of the traveler to cross without looking and listening effectively was excusable or culpable* ; that is, whether or not it amounted to negligence or willful misconduct. (Citations omitted.) The true form of the inquiry is: Could the traveler by the reasonable use of his senses in the performance of his duty to look and listen under the circumstances surrounding him have discovered the proximity of the approaching train in time to avoid the accident?

The facts and conditions which may quality the duty and excuse the failure to look and listen within the foregoing rules are usually: First, where looking and listening would not have availed to avert the injury . . .; third, the presence of some imminent danger or emergency, not brought about by the traveler's own negligence; fourth, the presence and influence of unusual or extraordinary conditions, not created or controlled by the traveler himself, and especially where such conditions are brought about by the railway company, which are sufficient to distract and divert the attention of a man of ordinary prudence and self-possession from the duty of looking and listening effectively for an approaching train. *Chisolm v. Seaboard Airline Ry.*, 121 S.C. 394, 114 S.E. 500, 502 (1922).

and—

It has never been held in this state that one about to cross a railroad track at a public highway or street crossing is under an *absolute* duty to stop, look, and listen,

---

**5.** Wessinger's deposition (p. 18–19).

before going on said track, unless the exercise of ordinary care and prudence, under all the surrounding facts and circumstances, requires the adoption of such a course, and it is ordinarily a question for the jury to determine, in the application of the standard of due care, whether the attempt of a traveler to cross without *looking or listening effectively was excusable or culpable.* (Citations omitted.) *Clark v. Southern Railway Company,* 243 S.C. 27, 131 S.E.2d 844, 846–47 (1963). Accord: *Seaboard Coastline Railroad Co. v. Owen Steel,* D.C., 348 F.Supp. 1363 (1972).

Additionally,

. . . [A] traveler when reaching a railroad crossing and before attempting to cross the track or tracks must use his senses of sight and hearing to the best of his ability under the existing circumstances, and must look and listen in both directions for approaching trains, *if not prevented from doing so by the railroad's fault* and, to the extent the matter is under his control, he must look and listen at a place and in a manner that will make the use of his senses effective. (Emphasis added.) *Connelly v. Southern Railway Company,* 249 S.C. 363, 154 S.E.2d 569, 571 (1967).

Plaintiff submitted along with her memorandum opposing defendant's motion for summary judgment, the affidavits of two experts, Frank D. Fowler and J. Edwin Clark, Ph.D.[6]

In considering a motion for summary judgment, the court *must consider the*

affidavits submitted in support of or opposition to the motion. (footnote # 3, supra). Fowler's affidavit reads in part as follows:

3. . . . I have given opinion testimony in safety-related litigation in both Federal and State courts. In particular, I have rendered opinion testimony regarding railroad grade crossing safety and railroad grade crossing design factors in Federal and State courts in Florida and Federal court in Georgia.

4. With respect to the above-styled cause of action: I have investigated the circumstances surrounding the accident between Herbert Wessinger and a Southern Railway train. I have read and reviewed the accident reports, witness statements and the reports supplied by the railroad. Additionally, I have personally visited the scene and made measurements and photographs. I have also reviewed recommended design standards promulgated by the American Association of Railroads and the American Association of State Highway and Transportation Officials. In addition, I have reviewed other documents and research into the problems of grade crossing safety.

5. The sight distance at this crossing does not meet the minimum requirements specified by the American Association of Highway and Transportation Officials, nor does it meet recommended standards promulgated by the Institute of Traffic Engineers.

6. The geographical layout of the crossing and the approach road render this crossing dangerous.

**6.** Fowler's affidavit states that he is a member of the firm of *Fowler, Fuehrer and Associates, Inc.,* safety and engineering consultants whose offices are located at 707 East Colonial Drive, Orlando, Florida. He has received a bachelor of arts degree from New Mexico State University with a major in psychology and a minor in engineering and a master of science degree from Kansas State University with a major in psychology and a minor in engineering. He is a registered P.E. in safety (State of California) and is an adjunct professor at Rollins College, Winter Park, Florida, teaching classes in public safety, traffic accident investigation and other related safety courses.

He has been employed in traffic safety and other public safety activities since 1966. He has been a consultant to the Highway Safety Foundation and performed numerous in-depth accident investigation studies to determine both mechanical, human and environmental factors involved in accidents.

Clark's affidavit stated that he is a Professor in the Dept. of Civil Engineering at Clemson University and primarily concerned with traffic engineering, and that he has investigated and inspected numerous crossings in the State of South Carolina relative to the adequacy of design of such crossings.

7. The absence of any type of oscillating light decreases the detectability of the train until a point too close for those negotiating the crossing to safely react to the threat. The absence of such lights is admitted.

8. In summary, it is my opinion that the crossing does not meet accepted engineering and safety design standards. The crossing also by its very nature creates in actuality an unreasonable danger to those approaching the crossing.

Clark's affidavit reads as follows:

A field visit and inspection of the Southern Railway and South Carolina Road S–167 at grade crossing in Lexington County was made on July 26, 1976. Approaching this crossing on Road S–167 from a westerly direction, the motorist encounters a sharp 90 degree horizontal curve turning north which has its point of curvature beginning at a point approximately at the railroad-highway crossing. Because of this small radius curve, the recommended safe speed is posted as 15 mph. Thus, a motorist approaching this crossing would be expected to be travelling at approximately 15 mph.

This crossing has the standard uniform advance warning railroad ahead sign located 413 feet from the crossing on the western approach. Protection at the crossing consists of the standard cross-buck signs. There were no active control devices such as flashing lights or drop gates installed or in operation at this crossing.

When a highway-railroad crossing is protected by a passive device such as cross-bucks, a driver approaching the crossing must be able to see an approaching train from a point at which he can safely stop his vehicle or either safely clear the crossing if he is too close to stop.

Using design standards of the American Association of State Highway and Transportation Officials, a vehicle approaching this crossing at 15 mph needs 73 feet for perception-reaction-stopping distance and should stop 20 feet prior to the track. Therefore, a driver on the western approach to this crossing should have an unobstructed view of an approaching train when he is 93 feet from the crossing. The train should be seen when it is 460 feet from the point of the crossing based on an approach speed of 45 mph for the train. Thus, the basic sight distance triangle formed consists of one leg of 93 feet measured from the west rail at the crossing along the highway and the second leg measured north along the railroad 460 feet from the point of the crossing. The hypotenuse of the triangle is the driver's line of sight. Sight distance at the crossing of the Southern Railway and S. C. Road S–167 does not meet this standard. Because of a growth of trees in the northwest quadrant of the crossing (this would be on the driver's left when he is approaching from the west), an unobstructed sight distance along the railroad from the highway does not exist for the westerly approach until the driver is approximately 13 feet from the western rail of the track. This is a hazardous crossing and should be protected by active protection device since an adequate sight distance does not exist for the motorist approaching from the west.

It is reasonably inferable [7] from these experts' affidavits that Mr. Wessinger did not look for the train, or see the train, or react to the train because he had no time to do so, even though he observed the signs and speed limits recommended by the railroad. Viewing the record most favorably for the plaintiff the inference is as follows: Wessinger saw the 15 mph sign and began to slow down,[8] he saw the "RR" sign, (even so) proceeding at the rate of 10–15 mph, the suggested speed, and in light of the allegedly obstructed view created by the railroad, he was placed in a position of vulnerability to the oncoming train before he could look or react.

7. See *Phoenix*, supra.

8. Wessinger's deposition so states this (p. 14) and it is uncontroverted.

Therefore, it is this court's judgment that on the record before it it is impossible to determine whether plaintiff was guilty of contributory negligence or of gross contributory negligence as a matter of law. Plaintiff should be allowed to fully develop his case at trial and as such a course is necessary to determine, (among other things) whether Wessinger by the reasonable use of his senses in the performance of his duty to look and listen under the circumstances surrounding him could have discovered the proximity of the approaching train in time to avoid the accident. See *Chisolm*, supra. Generally, whether a man who had travelled the road only once before[9] was grossly unreasonable (under the circumstances) in doing no more than following the suggested speed limit, in light of the fact that one is under no absolute duty to stop, look, and listen before crossing a railroad track is for the jury. *Clark*, supra; and there remains the question (of fact) as to whether his ability to use his senses was possibly prevented by the railroad's negligence. *Connelly*, supra.

The defendant's Motion for Summary Judgment is therefore denied.

AND IT IS SO ORDERED.

---

**9.** Wessinger's deposition.