Brian AHEARN, Virginia Grow, Emily Kay Murphy, Thomas N. Murphy, Ann Reed, Eleanor Whitson and Frank Whitson, Plaintiffs,

v.

**CHARTER TOWNSHIP OF BLOOMFIELD, a municipal corporation, Defendant.**

No. 94–CV–70639.

United States District Court,
E.D. Michigan,
Southern Division.

March 23, 1995.

sewer overflows, thus facilitating the gradual release of the stored effluent into the interceptors that connect to the Detroit treatment plant, and 2) subjecting any flows exceeding basin capacity to the minimal standard of primary treatment at the river's edge. The permit authorizes Bloomfield Township and the other joint permittees to continue discharging a combination of sewage and storm water ("combined sewage") into the Rouge River only if a combined sewer overflow ("CSO") retention basin is constructed.

Plaintiffs, Brian Ahearn, Virginia Grow, Emily Kay Murphy, Thomas N. Murphy, Ann Reed, Eleanor Whitson, and Frank Whitson, are residents and property owners in Bloomfield Township. At least one of the named plaintiffs resides in each of four geographic areas within a "Special Assessment District" ("SAD") designated by the Township. It is the combined sewage from the residences and storm drains located within the SAD that actually overflows into the Rouge River on wet weather days, creating pollution in violation of the Clean Water Act.

The complete background leading to these motions need not be repeated here. Reference can be made to my opinion, dated August 19, 1994.

The Township, exercising its authority under the Drain Code of 1956, MICH.COMP.LAWS § 280.490 (1994), determined that a portion of the cost of constructing the CSO retention basin should be borne by the plaintiffs and other similarly situated owners of real property within the SAD. On August 19, 1994, this Court determined that, because a special benefit had been conferred upon them, Bloomfield Township could lawfully levy a special assessment on the SAD properties, so long as all other applicable requirements of Michigan law were met by the implementation scheme chosen. The Township then subdivided the SAD into the following four areas with corresponding rates of assessment to be levied upon each residence located therein over a twenty-year period: 1) Bloomfield Village ($350 per year); 2) Oakland Hills ($350 per year); 3) Westchester Village ($260 per year); and 4) Birmingham Farms ($35 per year).

Mark S. Demorest, Troy, MI, for plaintiffs.

William P. Hampton, John M. Donohue, Robert H. Fredericks, Farmington Hills, MI, for defendant.

### OPINION AND ORDER

FEIKENS, District Judge.

### I. BACKGROUND

Charter Township of Bloomfield ("Bloomfield Township" or "Township"), along with the Oakland County Drain Commissioner, the City of Birmingham, and the City of Bloomfield Hills, is required, pursuant to National Pollutant Discharge Elimination System ("NPDES") Permit Number MI0048046, authorized under the Clean Water Act, 33 U.S.C. § 1251 et seq., to abate pollution of the Rouge River. Presently, sanitary sewage and storm water, combined in older sewer lines within the Township, overflow into the river during times of heavy precipitation. The NPDES permit was designed to correct this situation by: 1) providing for a retention basin to temporarily collect the combined

The Township now moves for summary judgment as to the validity of its special assessment and as to the issue of proportionality. The plaintiffs contend that the motion should not be granted, move to amend their complaint, and move for class certification.

## II. *ISSUES*

The central question presented is whether this Court should grant the defendant's motion for summary judgment and hold that the special assessments levied on the plaintiff property owners and other property owners similarly situated, under the authority of MICH.COMP.LAWS § 280.490 (1994), are valid. Specifically, this Court must decide: 1) the extent, if any, to which the proportionality test enunciated in *Dixon Road Group v. City of Novi*, 426 Mich. 390, 395 N.W.2d 211 (1986), applies; and 2) whether that test, if deemed applicable, has been satisfied.

The less controversial issues relating to the plaintiffs' motions to amend their complaint and to certify a class are summarily addressed in this opinion.

## III. *CONTENTIONS OF THE PARTIES*

In making their arguments for and against the legal validity of the special assessment amounts, both parties have primarily focused on whether, and if so, how, the "proportionality" prong of the Michigan Supreme Court's holding in *Dixon Road Group v. City of Novi*, 426 Mich. 390, 395 N.W.2d 211 (1986), applies to the facts of the case now before this Court.

The plaintiffs submit that *Dixon Road* must be applied to all cases involving special assessments under Michigan law, and thus to the present case. They argue that under *Dixon Road*, increases in the fair market values of their properties resulting from the special benefits conferred upon them by the construction of the CSO basin must be shown in proportion to the amounts of the special assessments levied. They assert that because the Township has not proffered evidence showing that, post-basin construction, property values will have appreciably increased from what they were before the undertaking of the basin project, the proportionality test of *Dixon Road* has not been met. Absent such an affirmative showing by the Township, the plaintiffs contend that they should be allowed to proceed to trial to offer evidence that the CSO project will cause little or no increase in their property values.

The defendant, Bloomfield Township, does not contend that the fair market values of the assessed properties will visibly rise above the values recorded prior to construction of the CSO basin. Rather, the Township takes the position that if the proportionality test of *Dixon Road* does apply, it has been satisfied because, after the CSO basin is installed, property values will have increased substantially from what they would have been absent construction of the basin. The Township contends that this increase far exceeds the highest assessment of $7000, payable over twenty years, and so proportionality between the benefits and costs accruing to each assessed property owner exists.

While maintaining that its special assessments pass the *Dixon Road* test, Bloomfield Township further contends that it is not necessary or desirable to proceed with that analysis because the facts and circumstances that confronted the Michigan Supreme Court when it formulated its proportionality test in *Dixon Road* are distinguishable from those at hand; thus, the case does not apply. The Township points out that the defendant city in *Dixon Road* was not faced with the threat of a public health emergency or the impending illegality that necessitated the construction of the basin in this case. The compelling nature of these concerns, the Township argues, requires inclusion of values other than those measurable only in dollars in the calculus, and justifies deference to legislative discretion.

The plaintiffs and defendants agreed at oral argument that the plaintiffs' motion for class certification under FED.R.CIV.P. 23(b)(2) is not necessary because the parties have stipulated to the consistent application of this decision to all property owners within the Bloomfield Village Combined Sewer Area.

Finally, the plaintiffs have asserted a new contention in their motion to amend their complaint, dated March 3, 1995. They assert

that the special assessments in this case violate Bloomfield Township Ordinance No. 454, relating to a user charge system for sewer service. Essentially, they argue that this ordinance precludes the Township from financing the basin project by any means other than charges to all sewer customers.

Bloomfield Township responds that the plaintiffs have misconstrued Ordinance No. 454, inasmuch as it was never intended to cover the financing of major capital replacements and improvements to the sewer system.

## IV. ANALYSIS OF THE LAW

### A. Defendant Bloomfield Township's Motion for Summary Judgment

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Purely factual issues are not amenable to summary judgment, but where the resolution of a dispute turns solely on legal principles, then summary judgment is appropriate. *See, e.g., Kentucky Rural Electric Cooperative Corp. v. Moloney Electric Co.*, 282 F.2d 481, 483–84 (6th Cir.1960).

In the case at hand, it is apparent to me that the controversy between the parties stems entirely from conflicting interpretations of the law. The plaintiffs do not contend, nor could they, that their property values would not be substantially reduced if they were unable to continue to discharge sewage from their homes during periods of combined sewer overflow. Yet this is precisely what would happen if the CSO retention basin is not constructed and discharges in violation of the permit are prohibited; in such a situation, sewage would back up and the habitability of the plaintiffs' residences would be seriously impaired. Thus, it can not be disputed that, absent construction of the basin, the plaintiffs' property values would be severely diminished. Nor does the defendant, Bloomfield Township, allege that

the fair market values of the plaintiffs' properties will increase substantially from their formally assessed values prior to the construction of the basin. Though value is a factual question, *Kadzban v. City of Grandville*, 442 Mich. 495, 502, 502 N.W.2d 299 (1993), no genuine issue presents itself where the parties are in agreement as to the factual assertions that can be made about fair market value, as they are here.

■ The parties have focused on whether and how the proportionality test delineated in *Dixon Road Group v. City of Novi*, 426 Mich. 390, 395 N.W.2d 211 (1986), applies to the agreed-upon material facts of this case. Analysis appropriately begins, then, with an examination of *Dixon Road* to determine whether it is applicable to the situation confronting this Court.

The Michigan Supreme Court in *Dixon Road* reviewed allegations that a special assessment was levied on properties which were scheduled to be rezoned from small farm agricultural residential to commercial uses. The two plaintiff property owners were assessed $264,736.15, at $13,236.81 per acre, and $765,302.33, at $38,769.11 per acre, respectively, to finance the construction of road system, water main, and storm drainage improvements, which were needed by the surrounding area as a whole because of the development that was expected to accompany the construction of a new major shopping mall. The expected benefits to the plaintiffs were cast in the following financial terms: the parcels were expected to appreciate in value by $5,000 per acre and $15,000 per acre, respectively, if and when the planned rezoning took place.

■ Fashioning a workable solution to the problem posed by the aforementioned facts, the Michigan Supreme Court held that "a determination of the increased market value of a piece of property after the improvement is necessary in order to determine whether or not the benefits derived from the special assessment are proportional to the cost incurred." *Dixon Road*, 426 Mich. at 401, 395 N.W.2d 211. This rule, cast in fair market value terms, was but a formulation of the more general principle that there must be a

reasonable proportionality between the amount of the assessment and the value of the benefits, alluded to in cases such as *St. Joseph Township v. Municipal Finance Commission,* 351 Mich. 524, 533, 88 N.W.2d 543 (1958), and *Crampton v. Royal Oak,* 362 Mich. 503, 520, 108 N.W.2d 16 (1961). *See Dixon Road,* 426 Mich. at 402, 395 N.W.2d 211.

In my view, this case is clearly distinguishable from *Dixon Road.* Adhering to the principles upon which that case rests, I cannot agree with the plaintiffs that Michigan law requires that the fair market values of their assessed properties after the basin is constructed must be appreciably higher than the values at which they were appraised prior to construction.

At stake here are important considerations pertaining to the concept of value which require going beyond mere numerical analysis. Environmental quality, public health and safety, and convenience to the residents themselves factor into the calculus in a way that they did not in *Dixon Road.* That case did not involve sanitary sewers. At least one Michigan court has noted the need to account for intangible values in such cases:

> In the case of sewers, one additional factor must be considered. There is no right to pollute and local government may take reasonable regulatory action under the police power to abate or prevent pollution. If it is established that a given piece of property is a source of pollution, the detriment to the lands of others must be weighed against the disproportion between the benefits and the assessment.

*Andrews v. County of Jackson,* 43 Mich.App. 160, 164, 203 N.W.2d 925 (1972).

■ Of course, it remains true that in order to be specially assessed, the plaintiffs must receive a benefit apart from the improved quality of the waters of the Rouge River enjoyed by all. This Court has already addressed that matter in its opinion of August 19, 1994, holding that the plaintiffs will enjoy a special benefit from the construction of the retention basin. But in addressing proportionality, it should be recognized that special benefits cannot always be expected to translate neatly into dollar terms. In *Dixon*

*Road,* it was reasonable to expect such a rough equivalence because the special benefit involved there was primarily economic. This case makes clear, however, that benefits can accrue to the property owner which may not be immediately reflected by a change in market price.

The Michigan Supreme Court has recognized that such difficulties can arise. In *Dixon Road* itself, it indicated that a "reasonable relationship" and not a "rigid dollar-for-dollar balance" between the amount of the special assessment and the amount of the benefit is what is really required. Then, in a successor case, the Michigan Supreme Court expanded on this point, indicating that "substantial evidence of increases in ... values" could be gleaned from evidence that "appearance, convenience and safety, and maintenance of the improvements" were enhanced by street and utility improvements. *Kadzban v. City of Grandville,* 442 Mich. 495, 506, 502 N.W.2d 299 (1993).

Similarly, in the present case, it is beyond question that continued access to the sewer system, enabled by construction of the retention basin, will ensure that conditions which bear on the plaintiffs' property values, such as health, safety and the environment, are enhanced. Indeed, without such access, the plaintiffs' homes would in all likelihood be rendered uninhabitable. The fact that important intangible indicators of value will be significantly affected as described amply supports the Township's contention that the special assessments at issue are valid.

■ Even though I do not deem it necessary to perform a strict fair market value analysis, it is worth noting that the special assessments at issue here pass muster under such a test. Clearly, the plaintiffs' property values will increase over what they would have been, absent the construction of the retention basin and given the fact that continued access to the sewage system in its former, river-polluting state has become illegal. It is also apparent that this increase would be great for each property owner, far exceeding the portion of the basin cost that is assessed to any residence. Since the properties are mainly single family homes, their

chief value lies in their habitability, which would be virtually destroyed if the plaintiffs could not remove the sewage from their homes on the wet weather days when overflow conditions are created.

The plaintiffs, having relied on a legal theory which fails to recognize that preventing sewage from backing up onto their residences is tantamount to affirmatively improving their properties, have not met their burden of showing a disproportionality between the costs and benefits associated with the CSO retention basin, *see Kadzban v. City of Grandville*, 442 Mich. 495, 502, 502 N.W.2d 299 (1993) (quoting *Dixon Road*, 426 Mich. at 403, 395 N.W.2d 211), and thus, I can see no grounds upon which the special assessments could be declared invalid. Furthermore, I foresee no development of the facts that can further clarify the application of the law in this case; thus, summary judgment is appropriate. *See Wessinger v. Southern Railway Co.*, 438 F.Supp. 1256 (D.S.C.1977).

### B. *Plaintiffs' Motions*

In view of the stipulation entered into by the parties that all property owners in Bloomfield Township similarly situated to the plaintiffs will be treated similarly with respect to the implementation of this decision, and the parties' agreement at oral argument to forego formal class certification, I find that the plaintiffs' motion for class certification is moot.

The plaintiffs' motion to amend their complaint is granted. However, the addition of a new count does not affect the disposition of this case, as the ordinance proffered by the plaintiffs is not applicable.

### V. *CONCLUSION*

For the reasons set forth above, summary judgment is granted to the defendant, Bloomfield Township. The plaintiffs' motion to amend their complaint is granted, and their motion to certify a class is rendered moot. IT IS SO ORDERED.